UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARK MANNING,

       Plaintiff,                        Hon. Ellen S. Carmody

v.                                           Case No. 1:16-CV-1148

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties subsequently agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons articulated herein, the Commissioner's decision is **vacated and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

# **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 40 years of age on his alleged disability onset date. (PageID.268). He successfully completed high school and worked previously as a structural steel worker. (PageID.56). Plaintiff applied for benefits on May 28, 2013, alleging that he had been disabled since April 1, 2013, due to knee impairments, back pain, shoulder injury, depression, and left ear problems. (PageID.268-76, 315). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.142-266). On May 7, 2015, Plaintiff appeared before ALJ Shirley Michaelson with testimony being offered by Plaintiff and a vocational expert. (PageID.89-140). In a written decision dated July 21, 2015, the ALJ determined that Plaintiff was not disabled. (PageID.42-57). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (PageID.26-30). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

# ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) degenerative disc disease of the cervical spine status post fusion at C5-6 and C6-7; (2) degenerative disc disease of the lumbar spine; (3) degenerative joint disease of the left knee status post multiple surgeries and knee replacement; (4) history of rotator cuff tears; and (5) depression, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.44-46). With respect to Plaintiff's residual functional capacity, the ALJ found that Plaintiff retained the ability to perform sedentary work subject to the following limitations: (1) he needs to change positions for 1-2 minutes every half hour and (2) he is limited to simple, routine, and repetitive tasks (i.e., unskilled work). (PageID.47).

The ALJ found that Plaintiff cannot perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a

5

significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 152,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.132-38). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I.          **The ALJ Properly Assessed the Medical Opinion Evidence**

On October 28, 2014, Dr. Paula DeKeyser completed a form report regarding Plaintiff's ability to perform physical and mental work-related activities. (PageID.544-49, 551-52). Dr. DeKeyser concluded that Plaintiff suffered from extreme physical and mental limitations that precluded all substantial gainful activity. The ALJ afforded "no weight" to Dr. DeKeyser's opinion. (PageID.50-51, 55). Plaintiff argues that he is entitled to relief on the ground that the ALJ failed to provide sufficient reasons for discounting the opinion of his treating physician.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v.*

*Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

7

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

With respect to Plaintiff's physical limitations, Dr. DeKeyser reported that Plaintiff was unable to lift/carry any weight, use his upper extremities, or perform any postural activities on a "regular and continuous basis." (PageID.544, 546-47). Regarding Plaintiff's non-exertional impairments, the doctor evaluated Plaintiff in 15 categories, concluding that in 12 categories Plaintiff experienced no ability to function for "a sustained, 8 hour work day." (PageID.551).

As the ALJ recognized, Plaintiff suffers from several severe impairments, as well as a history of several consequential surgeries. (PageID.47-55). Nevertheless, the medical record does not support Dr. DeKeyser's opinion that Plaintiff is effectively precluded from any and all work activities. Specifically, Plaintiff has participated in MRI, myelography, and electrodiagnostic examinations none of which are consistent with or support Dr. DeKeyser's opinions. (PageID.495-96, 498-99, 579, 581-82). The ALJ also correctly noted that there is no evidence in the record to support the non-exertional limitations identified by Dr. DeKeyser. (PageID.55). In sum, the ALJ's decision to discount Dr. DeKeyser's opinions is supported by substantial evidence.

**II.      The ALJ's Credibility Assessment is not Supported by Substantial Evidence**

Finding Plaintiff to be less than credible, the ALJ dismissed Plaintiff's "allegations of catastrophic pain." (PageID.52). Plaintiff argues that he is entitled to relief because the ALJ's assessment of his credibility is not supported by substantial evidence. The Court agrees.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's

9

subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). As the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, the ALJ is not permitted to make credibility determinations based upon "an intangible or intuitive notion about an individual's credibility." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). Instead, the ALJ's rationale for discrediting a claimant's testimony "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248. Accordingly, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.*

At the outset of the administrative hearing, the ALJ asked Plaintiff if he could "work at a mail room somewhere?" (PageID.95). Plaintiff responded that he "could do that. . .for a day

10

or so," but would then would likely encounter difficulty due to physical pain and mental instability. (PageID.96). The ALJ responded, not by exploring Plaintiff's response further to better determine the extent to which Plaintiff perceived he could function, but instead by instructing Plaintiff that he needed to "change [his] expectations" lest he be "miserable for the rest of [his] life." (PageID.96-97). As the ALJ put it, Plaintiff needed to undertake "a paradigm shift." (PageID.98). Plaintiff then attempted to describe how his physical impairments were impacting his emotional state of mind, but the ALJ interrupted with a lengthy soliloquy in which she attempted to explain to Plaintiff why he was experiencing stress and that he just "need[s] to focus on the positive." (PageID.98-99). As part of this soliloquy, the ALJ stated to Plaintiff, "you haven't shown me that there's something really wrong with you." (PageID.99).

The hearing then focused briefly on Plaintiff's loss of health insurance and unsuccessful attempts to resume working, as well as his numerous surgeries, physical impairments, and medications. (PageID.100-12). The ALJ then again launched into another soliloquy in which she appeared to engage in the practice of medicine, instructing Plaintiff how he should undertake pain management, despite Plaintiff expressly stating that he had discussed these matters at length with his care providers. (PageID.112-20). At one point, the ALJ enlightened Plaintiff with the following bit of medical treatment advice:

> Q: But a muscle relaxant might be - might help you sleep better then the Norco/Morphine combination, and it would help you cut back on the pain. Because what happens is when you're in pain, when you're - when you're - and the kind of pain you're in, the muscles that are in the same area as the bones that are hurting tense up. So half your pain is from the bone, and the other - a big piece of your pain is from the muscles that are next to the bone, and they're all tightened, and that causes a lot of pain. So the muscle relaxer works at the muscle part. Now, the Neurontin is supposed to help a little bit with that, but not enough. I mean I think - and I don't think the muscle relaxers

11

>are addictive in the same way as the Norco and the Morphine. So what you might want to do is just talk to her about increasing the muscle relaxers while you're trying to decrease the narcotics, because she knows and you know - well, first of all, the narcotics aren't dealing with your pain. They're certainly not helping you sleep, if I believe you. So taking more, it doesn't seem to be helping your pain or your sleep, so it's a perfect. . .it's a perfect time to see, can we try something else?

(PageID.118-19).

The topic then turned to vocational rehabilitation and retraining. Plaintiff attempted to describe the efforts he had made in this regard, but the ALJ kept interrupting to provide her personal opinions about the topic, including the observation that there existed "lots of jobs out there. . .that play to your strengths, not to your weaknesses," but that Plaintiff just was not in "the right frame of mind." (PageID.120-23). The ALJ then proceeded to again instruct Plaintiff with her knowledge of human biology, medicine, and the treatment of serious impairments:

> Q: Yeah, see, Dr. McMurray really thought you should have a better outcome, and he thought you were on the right track. He thought you were doing too much too fast, and were pushing yourself too hard, and that you needed to figure out a way to slow it down. I also think you need to have better communication with your doctors. You know, I know you had an MRI of your neck - the last MRI of your neck showed? What do you think the MRI looks -
>
> A: [INAUDIBLE]
>
> Q: What do you think is going on with your neck right now?
>
> A: I - one doctor that read it said there was a bulge, and it - [INAUDIBLE] it hurts.
>
> Q: All right. Well -
>
> A: Dr. McMurray said that and walked out of his office, never came back.

12

Q: Okay. Well, let me tell you. You've got - basically, what's going on in the most recent MRI is not enough that would explain your pain, okay? But I know that right after the MRI, you went and told Ms. Lissfelt that you had pinched nerves and bulging nerves and crunched nerves and, you know, discs - now, you went and told Ms. Lissfelt that your neck MRI was, like catastrophic right after you had it. And the reality of it was, it wasn't catastrophic.

A: Mm-hmm.

Q: You know, so you have to -

A: Right.

Q: I mean, I'm trying to get you to start thinking about things a little bit differently.

A: I don't know what the problems -

Q: I mean, basically, you hear that there's a little bit of disease and you're convinced that, you know, you've got a lot of disease. And you don't have a lot of disease in your neck, you don't have a lot of disease in your knee anymore. What you have, objectively, the actual tests don't explain all your pain. But let me tell you - I'll tell you a couple other things I know. This is a lot of information to take in. But people who are in chronic pain get depressed. Real common. It's another one of those things that -

A: [INAUDIBLE].

Q: - makes you human. Doesn't make you crazy, doesn't make you a bad person, doesn't make you weak. The simple form - wait until your daughter gets older, she'll explain it all to you - the body works, it's all electric charges and chemicals, okay? So when the "I hurt" stuff, you know, you're focused on all your pain, you're focused on all your pain, you're focused on what you can't do, you're focused on how much you hurt, those feelings, those chemicals and charges take up all the space. The "I feel good" stuff doesn't have anywhere to go. It can't get into the brain, and it can't get out of the brain, because the "I'm miserable and I hurt" stuff -

>   A: I laugh -
>
>   Q: What?
>
>   A: Oh, I laugh and I smile at my daughter and don't show her any pain, and I'm happy and can have some good moments.
>
>   Q: Well, no, I know. But in - over the long haul, the way the body works, at the end of the day you're depressed. Of course - I'm not saying that every single moment is depressed. I'm saying that there's just a flattening of sort of everything, okay? And one way to deal with the pain, and you had it exactly right, was you also deal with the depression, because the pain does make you depressed. But dealing with the depression can also help you manage your pain better. You know, pain makes depression worse and depression makes pain worse. They feed on each other. It's a reinforcing cycle. It is called the pain-depression syndrome. I didn't make it up. I got a flyer over here at Northwestern Memorial Hospital one time.

(PageID.124-26).

In sum, a review of the administrative hearing transcript reveals quite clearly that the ALJ failed to question Plaintiff in any meaningful way about his perceived functional limitations. The ALJ instead opined at length on human biology, disease diagnosis and treatment, pharmacology, psychology, her perceived inefficacy of the treatment approach adopted by Plaintiff's care providers, and her own preferred course of medical treatment.

It is well understood that an ALJ is not permitted to "play doctor" and make their own independent medical findings or otherwise substitute their own independent medical judgment for the findings and opinions made by licensed medical professionals. *see, e.g., Boulis-Gasche v. Commissioner of Social Security*, 451 Fed. Appx. 488, 494 (6th Cir., Aug. 23, 2011); *Campbell v. Commissioner of Social Security*, 2017 WL 2222926 (N.D. Ohio, May 3, 2017). As one court succinctly stated, "[a]n ALJ is not allowed to make medical findings or indulge in unfounded

hunches about the claimant's medical condition or prospect for improvement. He is not free to base his decision on such unstated reasons or hunches." *Holt v. Astrue*, 2012 WL 1567164 at *5 (N.D. Ala., Apr. 30, 2012).

The Court recognizes that the ALJ is properly tasked with assessing credibility and resolving conflicts in the record. The Court also recognizes that the line between resolving conflicts in the record and "playing doctor" can sometimes be difficult to discern. However, as the discussion above reveals, wherever that line is properly drawn, the ALJ was clearly on the wrong side of the line. Simply put, the ALJ spent the majority of the administrative hearing opining about matters that are beyond her purview and training. As a result, it is not reasonable to conclude that the ALJ's assessment of Plaintiff's credibility was not substantially informed by her amateur opinions regarding Plaintiff's impairments, diagnosis, and treatment. As a result, the Court concludes that the ALJ's rationale for discounting Plaintiff's subjective allegations is not supported by substantial evidence.

**III.     Remand is Appropriate**

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [his] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994); *see also*, *Brooks v. Commissioner of Social Security*, 531 Fed. Appx. 636, 644 (6th Cir., Aug. 6, 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 Fed. Appx. at 644. Evaluation of Plaintiff's claim requires the resolution of certain factual disputes which this Court is neither competent nor authorized to undertake in the first instance. Moreover, there does not exist

compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **vacated and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.


Date: August 9, 2017 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge